UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LARCO TOWING, INC. | CIVIL ACTION |
| VERSUS | NO. 09-2928 c/w 09-2929 and 09-3534 |
| NEWPARK DRILLING FLUIDS, LLC | SECTION "N" (1) |
| | **Applies to 09-3534** |

## ORDER AND REASONS

Presently before the Court is the "Rule 12(b)(6) Motion to Dismiss RICO Counts" (Rec. Doc. 58) that was filed by Defendants Mid-South Services, Inc., Kevin Larousse, Larry Collins, and Woodwell "Woody" Collins (collectively, the "Mid-South Defendants"). With their motion, the Mid-South Defendants seek dismissal of Counts I and II of the complaint (Rec. Doc. 1) filed by Plaintiff, Newpark Drilling Fluids, L.L.C. ("Newpark"), in Civil Action 09-3534. Counts I and II assert claims under the Racketeer Influenced and Corrupt Organizations Act (RICO), specifically 18 U.S.C. §§1962(c) and (d). As stated herein, **IT IS ORDERED** that the motion is **DENIED**.

## Background

Newpark, a drilling fluids company, provides services in connection with oil and gas production activities in Louisiana. Mid-South Services, Inc. ("Mid-South"), in turn, provided

1

contract labor to support operations at Newpark's Port Fourchon, Louisiana facility.[1] Until his termination, Defendant Richard Autin, a Newpark employee, was responsible for the overall management of that facility, including the hiring of Mid-South laborers and the approval of its invoices.

The relationship between Mid-South and Newpark is governed by a September 4, 2002 Master Service Contract ("MSC"). Pursuant to the MSC, Mid-South provided Newpark, by fax or mail, with invoices for the work performed by its laborers. The invoices were backed up with time sheets containing the name and position of each employee, as well as the number of regular and overtime hours each had worked.

Newpark's complaint alleges that from September 2002 until December 2008, Mid-South, through Larousse, and with the knowledge and/or assistance of Larry and Woody Collins, and Autin, routinely added four or five fictitious employees to each of these invoices, and falsely claimed that each of those employees had worked an eighty-hour week. Once approved by Autin, the invoices were forwarded to Newpark's Houston, Texas office for payment to Mid-South or one of its affiliates. For his role in the scheme, Autin allegedly received kickbacks from the Mid-South Defendants in the form of jobs for his wife and son, whose "salaries" for services never actually rendered also were charged to Newpark. Through the submission of more than 200 false invoices, Newpark claims that the defendants defrauded it in excess of $1.5 million.

---

[1] Kevin Larousse is the president and a part-owner of Mid-South. Larry and Woody Collins also are part-owners of Mid-South and, at various times, have served as officers of the company.

## Analysis

In evaluating motions to dismiss filed under Rule 12(b)(6), the Court "must accept all well-pleaded facts as true, and . . . view them in the light most favorable to the plaintiff." *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir.), *cert. denied*, 476 U.S. 1159, 106 S. Ct. 2279 (1986). If sufficient notice of the basis of the plaintiff's claim is provided, "dismissal will not be affirmed if the allegations [made] support relief on any possible theory" of recovery. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir. 1999) (internal citations omitted). Moreover, "[a]ll questions of fact and any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor." *Lewis v. Fresne,* 252 F.3d 352, 357 (5th Cir. 2001).

RICO claims under § 1962 have three common elements: "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007)(internal citations omitted). In support of their motion, the Mid-South Defendants contend that Newpark has not adequately alleged a RICO "enterprise" or "pattern of racketeering activity." As this relatively early stage of this litigation, the Court, applying the foregoing directives, declines to agree. Specifically, on the showing made, the Court is not convinced that the alleged conduct of the Mid-South Defendants, considered in combination with that of Autin, does not qualify as a "association-in-fact" enterprise. *See Boyle v. United States,* 129 S. Ct. 2237, 2243-46 (2009) (emphasizing liberal construction of RICO and discussing proof of association-in-fact enterprise); *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 445-48 (5th Cir. 2000)(discussing person/enterprise distinction required by §1962(c)).

The Court reaches the same conclusion with respect to a "pattern of racketeering activity." To satisfy this element, a plaintiff must allege two or more predicate criminal acts that are (1) related and (2) "amount to or pose a threat of continued criminal activity." *Abraham,* 480 F.3d at 355 (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239, 109 S. Ct. 2893, 2900 (1989)). As recently recounted by Chief District Judge Sarah Vance:

> The requirement of "continued criminal activity" reflects Congress's concern with "long-term criminal conduct." *H.J. Inc. v. [Nw. Bell Tel. Co.*, 492 U.S. 229, 242 109 S. Ct. 2893, 106 L. Ed.2d 195 (1989)]. Continuity is "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 239, 109 S. Ct. 2893. An open period of continuity refers to a "specific threat of repetition extending indefinitely into the future" or "that the predicates are a regular way of conducting defendant's ongoing legitimate business." *Id.* A closed period of continuity may be demonstrated by a series of related predicates extending over a substantial period of time. *Id.* at 242, 109 S. Ct. 2893.

*See Castrillo v. American Home Mort. Servicing, Inc.,* 670 F. Supp.2d 516, 530 (E.D. La. 2009)

Contrary to the Mid-South Defendants' arguments, the Court does not find the Fifth Circuit's decisions in *Word of Faith World Outreach Center Church, Inc. v. Sawyer*, *In re Burzynski*, *Calcasieu Marine National Bank v. Grant*, or *Delta Truck & Tractor, Inc. v. J.I. Case Company,* to support dismissal in this instance. As the Mid-South Defendants urge, those cases support the notion that, where RICO predicate acts are "part and parcel of a single otherwise lawful transaction" or endeavor, there is no pattern of racketeering activity. Significantly, each of those cases addressed conduct that had an inherent and definite termination point *and* did not present a future threat of repetition. *See Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118, 122-24 (5th Cir. 1996) (production of ABC *PrimeTime Live* broadcasts), *cert. denied*, 520 U.S. 1117, 117 S. Ct. 1248 (1997); *In re Burzynski*, 989 F.2d 733, 742-43 (5th Cir. 1993)(defense of a

4

lawsuit); *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1462-64 (5th Cir.1991)(deprivation of spouse's community property interest in partnership); *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242-44 (5th Cir. 1988) (corporate merger and reorganization). That rationale likewise supported the dismissal of the plaintiffs' RICO claims in *Castrillo* and *Succession of Wardlaw v. Whitney National Bank*. *See Castrillo,* 670 F. Supp.2d at 531 (describing fraudulent debt collection/eviction proceeding as a "single, discrete transaction" that was "by its nature a one-time resolution" with no threat of future repetition); *Succession of Wardlaw*, No. 94-2026, 1996 WL 185781, *3-4 (E.D. La. April 18, 1996)(Clement, J.)(theft of funds from estate)

Here, however, the Mid-South Defendants and Autin allegedly fraudulently over-billed Newpark more than 200 times during a six-year period. Such conduct constitutes related predicate acts occurring "over a substantial period of time." Further, the conduct threatened to extend indefinitely into the future.[2] Indeed, like in *Abraham*, there is no reason to believe that the fraud would have stopped but for Newpark's discovery of it and termination of Autin. *See Abraham*, 480 F.3d at 356 (unlike precedents identifying single illegal transaction, there was no reason to believe systematic victimization would not have continued indefinitely had suit not been filed). Thus, these circumstances are more akin to those recently found to be sufficiently continuous to constitute a RICO "pattern of activity." *See Commercial Metals Co., v. Chazanow*, No. 09-CV-0808, 2009 WL 3853704, *2 & 7 (N.D. Tex. Nov.17, 2009)(Boyle, J.) (618 payments totaling more than $3 million over 32 months); *Beta Health Alliance MD PA v. Kelley Witherspoon L.L.P.*, No. 09-399, 2009 WL 2195882, *3-4 (N.D. Tex. July 22, 2009) (Stickney, M.J.)(law firm's and lawyers' fraudulent referral

---

[2] In addition, the alleged fraudulent conduct arguably had become Mid-South's regular way of conducting its (otherwise) ongoing legitimate business with Newpark.

5

of 34 patients over period of five years for medical services).

Nor, given the foregoing, is the Court persuaded that the presence of a single victim and a single scheme in this dispute allow the defendants to escape possible RICO liability for their alleged "long-term criminal conduct." The same is true with respect to the scheme's dependence on Autin's complicity, and that all of the invoices were issued for services rendered (or, allegedly, *not* rendered) pursuant to the provisions of the MSC.[3] While the MSC allowed for termination by either party upon thirty (30) days notice, it did not otherwise set an ultimate termination point for the agreement. Further, the MSC did not itself obligate Newpark to utilize Mid-South's services or obligate Mid-South to agree to provide services. Rather, the MSC served only to provide certain terms and conditions applicable to any such services or materials that Mid-South later agreed to furnish to Newpark. In other words, the mere existence of the MSC is not sufficient to transform six years of more than 200 allegedly fraudulent invoices into a "single, discrete transaction."

In summary, at this stage of the litigation, the Court is not convinced that Newpark's complaint does not satisfactorily plead the "enterprise" and "pattern of racketeering activity" elements

---

[3] *See* Exhibit "A" to Supplemental Memorandum in Support of Rule 12(b)(6) Motion to Dismiss RICO Counts, Rec. Doc. 103.

of RICO claims brought under 18 U.S.C. §§1962(c) and (d).  Accordingly, **IT IS ORDERED** that the Mid-South Defendants' "Rule 12(b)(6) Motion to Dismiss RICO Counts" (Rec. Doc. 58) is **DENIED**.

New Orleans, Louisiana, this 31st day of March 2010.

_____
**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**